**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| OWNER OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., *et al.*, | : : : : |
| Plaintiffs, | : : Case No. 05-00056 |
| v. | : **JUDGE ALGENON L. MARBLEY** : Magistrate Judge Norah McCann King |
| COMERICA BANK, | : : |
| Defendant. | : |

**OPINION AND ORDER**

**I. INTRODUCTION**

Defendant Comerica Bank ("Comerica") moves to dismiss (docket no. 28) the second amended complaint filed by Plaintiffs Owner-Operator Independent Drivers Association ("OOIDA"), Carl Harp, and Michael Wiese (collectively, "Plaintiffs"). For the reasons set forth below, the Court **DENIES** Comerica's motion.

**II. BACKGROUND**

Plaintiffs seek to enforce the final judgment entered by this Court on July 16, 2004, in *OOIDA v. Arctic Express, Inc.*, No. 97-750 (the "*Arctic* Litigation"). Harp and Wiese are "owner-operators" of trucking equipment and OOIDA is an owner-operator industry association with more than 141,000 members.

In the *Arctic* Litigation, the Court found that the Plaintiffs had entered into agreements whereby they leased their trucking equipment to Arctic. As part of these lease agreements, Arctic deducted nine cents per mile from the compensation owed to each owner-operator for purposes of repairing and maintaining the leased trucking equipment. This Court held that these

"maintenance escrow funds" were subject to the requirements of the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.12, and that Arctic therefore had unlawfully failed to return them to owner-operators upon termination of the lease agreements. This Court certified the case as a class action and granted final approval to a settlement awarding the Class $5,583,084, which equaled the total amount of maintenance escrow funds Arctic owed, plus interest.

On January 16, 2004, Plaintiffs filed this action against Comerica, alleging that Comerica has the maintenance escrow funds owed to *Arctic* Class members.[1] Plaintiffs allege that Arctic and Comerica entered into two revolving credit loan agreements, one dated May 3, 1993, and the other dated April 29, 1998. At the same time as the loan agreements were in effect, Arctic also maintained certain deposit accounts with Comerica, in which Arctic deposited its earnings. Pursuant to the loan agreements, Arctic borrowed enough money from Comerica to pay Class members' weekly compensation, minus the nine cents per mile deducted for repair and maintenance of the trucking equipment. Plaintiffs allege that Comerica then collected the maintenance escrows from Arctic's depository accounts and applied them toward paying down Arctic's loan obligations to Comerica. Plaintiffs claim that the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.12(k), created a statutory trust over their maintenance escrow fees, and that *Arctic* Class members are entitled to recover their trust property, whether from Arctic, or the subsequent holder of the trust property, in this case Comerica.

On May 16, 2006, this Court granted in part and denied in part Comerica's motion to dismiss the amended complaint. The Court first held that it did have subject matter jurisdiction,

---

[1]Plaintiffs' suit was originally filed as an adversary proceeding in Arctic's bankruptcy. After a final judgment was entered in the *Arctic* Litigation on July 16, 2004, this Court withdrew the bankruptcy reference, and Plaintiffs' action against Comerica was lodged with the Court.

2

contrary to Comerica's argument, because the federal Truth-in-Leasing regulations created a statutory trust over the maintenance escrow fees owed to the *Arctic* Class members, and therefore gave rise to a *federal* claim to recover those fees. Second, the Court granted Comerica's motion to dismiss "to the extent [the complaint] referenced the 1993 loan agreement . . . ." Comerica contended that Plaintiffs could not recover any escrow fees that Comerica transferred out of Arctic's depository accounts in connection with the 1993 loan agreement because Ohio law specified a six-year statute of limitations for "an action . . . upon a liability created by statute." Ohio Rev. Code ("O.R.C.") § 2305.07. Plaintiffs argued that O.R.C. § 2305.07 was inapplicable because the maintenance escrow fees constituted a "continuing and subsisting trust," the recovery of which is not subject to any statute of limitations under O.R.C. § 2305.22. This Court held that Plaintiffs failed to satisfy the elements of a "continuing and subsisting trust" and therefore granted Comerica's motion to dismiss as to the 1993 loan agreement.

  Plaintiffs thereafter moved to amend the complaint a second time. Plaintiffs sought to plead facts showing that they could not have discovered their claim against Comerica until December 2003, and that any applicable statute of limitations did not begin to run until that time. Comerica did not oppose Plaintiffs' motion, and in part on that basis, this Court granted the motion on March 20, 2007.

  The second amended complaint contains identical substantive allegations as the prior version, and continues to seek relief in connection with the 1993 loan agreement. The only difference is that the second amended complaint adds new paragraphs twenty-four through thirty, which set forth facts regarding Plaintiffs' discovery of their claim against Comerica. Plaintiffs

3

allege that pursuant to the Lease Agreements between Arctic and Class members, Arctic disclosed to Class members only the amount of maintenance escrow fees it withheld from their compensation, not where or how the fees were maintained. Further, under the escrow provisions of the Truth-in-Leasing regulations, Arctic was not required to hold the maintenance escrow fees in a separate account; according to Plaintiffs, "[f]unds returned to the owner-operator may be drawn from any source available to the carrier." Plaintiffs thus plead that they did not know, and did not have any reason to know, about any arrangements that Arctic made with respect to the maintenance escrow fees, let alone the loan agreements with Comerica. On October 31, 2003, shortly before the trial in the *Arctic* Litigation was scheduled to begin, Arctic filed a bankruptcy petition, thus halting the *Arctic* proceedings. Plaintiffs allege that they first learned about Comerica's role in transferring the maintenance escrow fees out of Arctic's depository accounts on December 2, 2003, through testimony given in the bankruptcy case. Six weeks later, on January 16, 2004, Plaintiffs filed an adversary proceeding against Arctic and Comerica in the bankruptcy court, seeking return of their escrow fees.

On April 11, 2007, Comerica moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the second amended complaint. Comerica argues that Plaintiffs have ignored this Court's prior dismissal order and have improperly continued to plead that their entitlement to relief extends from July 1, 1993 to the present. The parties' briefing requires the Court to answer the following questions: (1) whether the Court's prior dismissal order permanently foreclosed any recovery for Plaintiffs in connection with the 1993 loan agreement; (2) whether Plaintiffs should be estopped from arguing that their claim arises out of the federal common law of trusts; and (3) whether Plaintiffs' claim was timely filed. The Court will address each of these

issues in turn.

### III.  STANDARD OF REVIEW

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) if a party "fail[s] to state a claim upon which relief can be granted."  "On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

Ordinarily, dismissing claims as untimely under Rule 12(b)(6) is disfavored because plaintiffs have no duty to plead facts negating an affirmative defense, such as the statute of limitations.  *Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir. 2006).  "However, . . . dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."  *Id.*; *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (stating that a statute of limitations defense may be brought on a motion to dismiss when it is apparent from the face of the complaint that the time limit for bringing the claim has passed).  Further, the plaintiff bears the burden of "plead[ing] circumstances which would indicate why the [cause of action] was not discovered earlier and which would indicate why the statute should be tolled."  *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987).

### IV.  ANALYSIS

#### A.  The Effect of the Court's Prior Dismissal Order

Comerica argues that Plaintiffs are improperly trying to re-litigate a settled issue, that is,

their right to recover in connection with the 1993 loan agreement.  Comerica insists that because the Court did not expressly state that its partial dismissal of Plaintiffs' claim was *without prejudice*, the law presumes that the dismissal was *with prejudice*.  *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 523 (6th Cir. 2004).  Further, Comerica argues that Plaintiffs were well aware of the facts underlying the "discovery" theory of their claim's timeliness when they opposed Comerica's first motion to dismiss, and that they should have presented this theory at that time, rather than relying solely on their "continuing and subsisting trust" theory.  Plaintiffs' failure to advance their "discovery" argument in the first round of briefing, says Comerica, should preclude them from being heard on it now.

  The Court disagrees.  Comerica never satisfactorily accounts for the fact that Plaintiffs sought and were granted leave to file a second amended complaint.  Comerica says that "Plaintiffs cannot assume that this Court's leave to file a second amended complaint was an invitation to re-litigate the statute of limitations defense under a new theory."  While perhaps not an "invitation," the Court's granting of Plaintiffs' motion, along with Comerica's non-opposition to that motion, was at least an opportunity for Plaintiffs to do that very thing, namely "re-litigate the statute of limitations defense under a new theory."  Plaintiffs were not exactly silent (nor could they have been) about their purpose in seeking leave to amend.  They expressly stated in their motion that they sought to amend "to allege facts which establish that any applicable limitations period did not begin to run until Class Members discovered the cause of action against Defendant Comerica Bank on December 2, 2003 during testimony in the bankruptcy proceeding . . . ."  If Comerica believed that Plaintiffs' proposed pleading amendments were foreclosed by this Court's prior dismissal order, Comerica should have opposed Plaintiffs'

6

motion for leave to amend.

As for Comerica's argument that Plaintiffs could have raised their discovery rule argument in the earlier briefing, and should not now be rewarded for their dilatory behavior, Comerica is wrong.  For a party to avail itself of the discovery rule, it must affirmatively plead facts alleging the circumstances surrounding the discovery of its claim, including facts showing that the party acted diligently to ascertain the nature of the claim.  *See e.g., Ormiston v. Nelson*, 117 F.3d 69, 72 (2d Cir. 1997) (holding that where the plaintiff's § 1983 action was otherwise time-barred, the plaintiff was required to plead facts asserting that he was incapable of understanding the circumstances giving rise to his claim at the time he was injured); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1158-60 (6th Cir. 1991) (affirming the dismissal of the plaintiffs' complaint because they did not adequately allege that they diligently investigated their claim when they first had notice of it); *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1481 (D. Colo. 1995) (finding that the plaintiffs sufficiently alleged that they satisfied the applicable statute of limitations because they pleaded that they could not have learned about the existence of their claims until the bankruptcy trustee undertook an investigation).  Probably because they did not expect, or did not wish to invite, a statute-of-limitations attack, Plaintiffs did not plead the discovery rule in their initial complaint, and therefore could not defend against Comerica's motion to dismiss on that basis.  Even had Comerica opposed Plaintiffs' motion to amend the complaint, granting the motion still would have been proper to enable Plaintiffs to allege that their claim did not accrue until they discovered that Comerica was holding their maintenance escrow fees.

Finally, the Court rejects Comerica's attempt to paint its dismissal order as conclusively

adopting O.R.C. § 2305.07 as the statute of limitations governing Plaintiffs' claim. True, Comerica relied upon § 2305.07 in its first motion to dismiss and this Court granted that motion insofar as Plaintiffs' claim related to the 1993 loan agreement. Those facts, however, do not add up to the proposition that the Court endorsed § 2305.07 as the controlling limitations period. Rather, the Court merely held that dismissal was proper because Plaintiffs could not plead that, under Ohio law, their maintenance escrow funds constituted a "continuing and subsisting trust" exempt from any time bar. Thus, the Court's rejection of Plaintiffs' "continuing and subsisting trust" argument did not automatically imply its acceptance of Comerica's preferred statute of limitations.

### B. The Basis for Plaintiffs' Claim

The parties agree that whatever the precise source of Plaintiffs' claim (see below), the Court must borrow the most analogous state statute of limitations. This, of course, is commonly done where federal law is silent about the controlling limitations period. *See N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34-35 (1995) ("Since 1830, state statutes have repeatedly supplied the periods of limitations for federal causes of action when the federal legislation made no provision, and in seeking the right state rule to apply, courts look to the state statute most closely analogous to the federal Act in need.") (internal citations and quotation marks omitted); *Holmes v. Donovan*, 984 F.2d 732, 735 (6th Cir. 1993) ("In general, when Congress does not specify a statute of limitations to govern a federal action, the standard practice is to borrow an analogous statute from state law.").

Comerica says that § 2305.07 applies because it provides the statute of limitations for actions "upon [] liabilit[ies] created by statute." Comerica apparently reasons that because

8

Plaintiffs' claim draws breath from the federal Truth-in-Leasing regulations, it is a "liability created by statute." Plaintiffs, by contrast, insist that their claim is not statutory at all, but instead arises out of the federal common law of trusts. Plaintiffs therefore contend that O.R.C. § 2305.09 specifies the governing limitations period.

Before addressing which limitations period applies, the Court must consider two antecedent questions. First, should Plaintiffs be estopped from arguing that their claim is predicated on the federal common law of trusts? Second, if not, is Plaintiffs' claim cognizable?

Comerica argued in its first motion to dismiss that the Court lacked subject matter jurisdiction over this case. Plaintiffs successfully rebutted Comerica's contention by arguing that the Court could exercise federal-question jurisdiction because the federal Truth-in-Leasing regulations created a statutory trust over Plaintiffs' maintenance escrow fees. In its latest motion to dismiss, Comerica argues that where Plaintiffs previously premised their claim on the statutory trust provisions of the Truth-in-Leasing regulations, they cannot now invoke the federal common law as the source for their claim. In other words, having prevailed on their statutory trust theory, Comerica says that Plaintiffs should be estopped from relying on a different theory just because it better serves their present purposes. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . .") (internal quotation marks and citation omitted).

The Court finds that Plaintiffs have not taken a contradictory position. They do not, as Comerica maintains, now disavow their earlier reliance on the Truth-in-Leasing regulations by seeking refuge in the federal common law. Plaintiffs have all along advocated the view that

9

while the Truth-in-Leasing regulations provide the basis for this Court's exercise of jurisdiction, the relief they seek—the return of their maintenance escrow fees—arises out of the federal common law of trusts.  This distinction also has not been lost on the Court.  In its prior dismissal order, the Court held that it had subject matter jurisdiction over the case because the statutory trust at issue is a creature of federal law.  At the same time, the Court acknowledged that Plaintiffs did not plead their claim under the Truth-in-Leasing regulations, but instead sought restitutionary relief:

> [W]hile the Court recognizes that 49 U.S.C. § 14704(a)(2) only authorizes suits against carriers, the resulting trust creates a legal basis for Plaintiffs' federal claim against a third party to recover those trust funds.  The statutory language precludes suits for damages against parties other than carriers, but the Complaint does not allege a violation of 49 U.S.C. § 14704(a)(2).  Rather, the Complaint seeks restitution of money allegedly withdrawn improperly by a third-party from a trust account.

The Court therefore concludes that Plaintiffs are not seeking to alter their theory of the case mid-course and may continue to press their claim as one that grows out of the federal common law of trusts.

Although courts should not casually resort to crafting federal common law rules, there is ample authority for Plaintiffs to recover under a federal common law trust theory here, should they succeed in proving their claim.  *See In re Columbia Gas Sys., Inc.*, 997 F.2d 1039 (3d Cir. 1993) (stating that "[d]eveloping a federal common law rule is the exception rather than the rule").  As a threshold matter, the Court has already determined that Plaintiffs' maintenance escrow fees were held in trust by Arctic.  *See Parker Motor Freight, Inc. v. Fifth Third Bank*, 116 F.3d 1137 (6th Cir. 1997) (holding that in an "interline freight network," a motor carrier that collected transportation and freight charges on behalf of other motor carriers held the charges in

10

trust); *Columbia Gas*, 997 F.2d at 1039 (holding that under the federal common law of trusts an owner of a natural gas pipeline held customer refunds and research surcharges in trust).

Moreover, courts will sometimes recognize a federal restitutionary remedy to recover property unjustly held by another party. In *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), the Supreme Court held that the petitioners could recover their trust property—funds in an employee benefit plan—through a restitutionary action. *See also Jamail v. Carpenters Dist. Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 (holding that where neither ERISA [Employee Retirement Income Security Act], nor state law, prescribed a remedy for recovering mis-paid pension plan contributions, the plaintiff's "only recourse was a federal common law cause of action"). Similarly, in *C.H. Sanders Co. v. BHAP Housing Development Fund Co.*, 903 F.2d 114 (2d Cir. 1990), the Second Circuit concluded that where "the gist" of the plaintiff's claim was that HUD failed to comply with its duties under a federal statute, and was unjustly enriched thereby, the plaintiff could maintain a claim for restitution under the federal common law. That is precisely the situation here. Plaintiffs claim that Arctic did not comply with its duties under the federal Truth-in-Leasing regulations, and this Court agreed in the *Arctic* Litigation. Plaintiffs now seek to enforce the judgment against Arctic by pursuing relief from the entity that allegedly holds their maintenance escrow fees, namely Comerica.

## C. The Timeliness of Plaintiffs' Claim

Having concluded that Plaintiffs' claim is one for restitutionary relief arising out of the common law of trusts, the Court is persuaded by Plaintiffs' argument that O.R.C. § 2305.09 is the most analogous state statute of limitations. This provision specifies a four-year limitations

period for "the recovery of personal property, or for taking or detaining it," and further incorporates a "discovery rule" whereby claims "shall not accrue until the wrongdoer is discovered . . . ." Even if § 2305.09 did not include a discovery rule, Plaintiffs would be entitled to the benefit of one because their claim is federal in nature and therefore federal rules of claim accrual apply. *See e.g., Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (stating that "the accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period"). This is the case even when, as here, the governing statute of limitations is borrowed from state law. Under the federal discovery rule, "the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). The Court is thus obligated to ascertain at what point Plaintiffs should have discovered the basis for their claim against Comerica.

As described above, Plaintiffs contend that they could not have learned about the existence of their claim until December 2, 2003, when testimony in Arctic's bankruptcy proceeding revealed Comerica's role in transferring Plaintiffs' maintenance escrow fees out of Arctic's depository accounts. Comerica contends, on the other hand, that Plaintiffs' claim accrued, and the limitations period therefore began to run, no later than June 30, 1997, when Plaintiffs filed suit in the *Arctic* Litigation. As of this date, Comerica says, Plaintiffs knew that their maintenance escrow fees had not been returned to them, and could have learned, through the exercise of reasonable diligence, that Arctic deposited these fees with Comerica.

The problem with Comerica's argument is that just because Plaintiffs knew they had been harmed as of June 30, 1997, hardly means that they knew the identity of all the wrongdoers. It

was Arctic, not Comerica, that collected the maintenance escrow fees from Plaintiffs. That being the case, Plaintiffs took the natural and reasonable course of action when they discovered the loss of their property: they sued Arctic, the entity with whom they entered into the lease agreements, the entity that deducted the maintenance escrow fees from Plaintiffs' regular compensation, and the entity that subsequently failed to return the fees.

Comerica asks the Court to take judicial notice of the pleadings in the *Arctic* Litigation, apparently as support for its argument that through the exercise of reasonable diligence, Plaintiffs could have discovered the basis for their claim against Comerica as of the filing of the *Arctic* complaint on June 30, 1997. But Comerica fails to bring its argument full circle. It nowhere states that information was disclosed in the *Arctic* Litigation that would have alerted Plaintiffs to Comerica's allegedly wrongful conduct in transferring their maintenance escrow fees out of Arctic's accounts. Had Arctic defended in the *Arctic* Litigation by pointing the finger at Comerica as the possessor of Plaintiffs' trust property, had Arctic provided discovery to Plaintiffs showing Comerica's involvement, or had some other fact implicating Comerica emerged, Comerica's statute-of-limitations argument might have traction. As it is, however, Comerica asks too much by insisting that Plaintiffs were on notice of their claim against Comerica on June 30, 1997, just because they were on notice of their claims against Arctic.

Accordingly, the Court finds that Plaintiffs' claim against Comerica is timely.

## V.  CONCLUSION

For the reasons described above, the Court **DENIES** Comerica's motion to dismiss (docket no. 28).

**IT IS SO ORDERED.**

    <u>s/Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: March 31, 2008**