IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OWNER-OPERATOR INDEPENDENT** : | |
| **DRIVERS ASSOCIATION, CARL HARP** : | |
| **and MICHAEL WISE, as Representatives** : | |
| **of the Class and THE CERTIFIED CLASS** : | |
| **OF OWNER-OPERATORS,** Case No. : | |
| C2-97-740 United States District Court : | |
| for the Southern District of Ohio, : | |
| : | |
| Plaintiffs, : | |
| : | **Case No. 05-CV-0056** |
| v. : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **COMERICA BANK,** : | Magistrate Judge King |
| : | |
| Defendant. : | |

**OPINION AND ORDER**

**I.   INTRODUCTION**

Proof Related to Damages, which seeks an Order from this Court requiring Plaintiffs' to prove their damages in this case. On October 31, 2011, at the close of trial, the Court granted Defendant leave to file a written proffer in light of new evidence on the issue of Plaintiffs' damages, which had been established prior to trial and were therefore not at issue in the trial. The matter is now fully briefed and ripe for decision. For the reasons stated below, Defendant's request that Plaintiffs be required to prove the amount of their damages recoverable from Defendant Comerica Bank is **DENIED**.

**II.   BACKGROUND**

The essential facts concerning the amount of Plaintiffs' damages in this case are as follows. Plaintiffs seek to enforce the final judgment entered by this Court on July 16, 2004, in *OOIDA v. Arctic Express, Inc.*, No. 97-750 (the "Arctic Litigation") against Defendant Comerica

Bank, Arctic's creditor, for the return of maintenance escrow funds owed to the plaintiff class of owner-operators.

In October 2003, Arctic and D & A filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio, thus halting the Arctic Litigation. In January 2004, Plaintiffs commenced an adversary proceeding against Arctic, D & A, and Comerica in the bankruptcy court, seeking return of the escrow funds owed to the Arctic Litigation class members. In May 2004, Plaintiffs entered into a $5.5 million settlement agreement with Arctic and D & A, which was approved by this Court in July 2004. After entry of the judgment and finalization of Arctic's plan of reorganization, the Plaintiffs then sought to satisfy their judgment against Comerica.

On May 27, 2005, Plaintiffs filed their First Amended Complaint against Comerica, seeking restitution or disgorgement of "the full amount in maintenance escrow funds plus interest in an amount equal to that awarded in Judgment entered in the Arctic Litigation." (Dkt. 7). Comerica filed a motion to dismiss Plaintiffs' claims, arguing, *inter alia*, that Comerica could not be bound by the judgment against Arctic because Comerica was not a party to the prior lawsuit. (Dkt. 10). This Court denied that basis for dismissal in its May 16, 2006, Order, ruling that "the Class may continue to seek restitution from Defendant for the return of Plaintiffs' escrow funds." *Owner Operator Indep. Drivers Ass'n v. Comerica Inc.*, Case No. 05-cv-056, 2006 U.S. Dist. LEXIS 29756, at *23 (S.D. Ohio 2006).

Plaintiffs amended their Complaint once more, seeking the same recovery for the full amount of the Arctic Litigation judgment. (Dkt. 26). On April 11, 2007, Comerica moved to dismiss the Second Amended Complaint, but did not again raise the issue of whether Comerica could be bound to the judgment from the Arctic Litigation. (Dkt. 28). The Court denied

Comerica's motion, opining that the funds held in escrow were subject to a statutory trust for Plaintiffs' benefit, and Plaintiffs were entitled to pursue a common law claim against Comerica for restitution. *See Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Inc.*, No. 2:05-CV-00056, 2006 U.S. Dist. LEXIS 29756, at *4 (S.D. Ohio May 16, 2006) (unpublished).

The parties filed cross-motions for summary judgment. Comerica disputed the amount of damages Plaintiffs could prove against it, arguing that "Plaintiff must be able to prove that all of the [maintenance escrow] funds are somehow in the hands of Comerica." (Dkt. 54). In its March 16, 2009, Order granting Comerica's motion for summary judgment and denying Plaintiffs' cross-motion, the Court disagreed, finding that, "[r]egardless of Comerica's lack of participation in the damages calculation in the Arctic Litigation, Plaintiffs can seek restitution of the judgment amount from Comerica." *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank,* 615 F. Supp. 2d 692, 703 (S.D. Ohio 2009). Plaintiffs appealed that order to the Sixth Circuit.

On March 3, 2011, the Sixth Circuit affirmed the Court's ruling on summary judgment in part and reversed in part. With respect to the damages issue, the panel found that "the particulars of Arctic's banking relationship with Comerica were accurately explained by the district court," *Owner Operator Indep. Drivers Ass'n v. Comerica Bank (In re Arctic Express)*, 636 F.3d 781, 788 (6th Cir. 2011), and thus Comerica "must therefore disgorge the trust property received in breach of trust unless it can establish a viable defense." *Id.* at 801.

On remand, this Court ordered pretrial briefing from parties on the issues of whether extraordinary discovery should be allowed and whether damages should be an issue at trial. Comerica once again took the opportunity to contest the amount of damages and argued it should be proved by Plaintiffs at trial. (Dkt. 80). In its August 11, 2011, Order this Court found that the Sixth Circuit's holding conclusively established the issue of recoverable damages against

3

Comerica at $5,583,084, and that the only issue at trial would be the viability of Comerica's statute of limitations defense. (Dkt. 84). Trial commenced on October 3, 2011, and on October 5, 2011, the Court stayed proceedings and ordered Plaintiffs to produce materials in their possession that were responsive to Defendant's extraordinary discovery requests and the Court's prior orders.

Defendant now claims that documents produced by Plaintiffs pursuant to the Court's October 5, 2011, Order provide new evidence that shows Plaintiffs and Arctic colluded together in the damages amount reached at settlement, and therefore Plaintiffs should have to prove their damages against Comerica.

### III. LAW AND ANALYSIS

#### A. Defendant's Claim that Plaintiffs Be Required to Prove their Damages

Defendant's Proffer to the Court can be divided into two separate requests: First, Defendant argues that the judgment reached against Arctic through settlement in the amount of $5,583,084 reflects Plaintiffs' damages against Arctic, *not* Comerica, and therefore Plaintiffs should be required to prove the amount of restitution Comerica owes under their statutory trust theory of recovery. Second, Defendant offers new documents produced by Plaintiffs during the October 2011 trial which, they argue, show that the *amount* of the damages in this case was inflated by Plaintiffs and Arctic during settlement, as both parties had an incentive to agree to a higher amount. Plaintiffs, Defendant argues, should therefore have to prove the accurate amount of damages for which Comerica is liable, which they have not done. The Court will treat each argument in turn.

Defendant's first argument, that it should not be held liable for the amount of damages reached in the Arctic Litigation, is essentially a motion for reconsideration of this Court's August

4

19, 2011, Order which, in interpreting the Sixth Circuit's prior opinion, held that "the question of the amount of damages that the Defendant owes to Plaintiffs has therefore already been determined" in the amount of $5,583,084. (Dkt. 84). The judgment of the Court determining the damages in this case will stand, therefore, unless Defendant could not have discovered the current theory for reconsideration at the time even with the exercise of due diligence:

> The purpose of a motion to alter or amend judgment is to correct manifest errors of fact or law. It is not ordinarily the function of a motion to reconsider either to renew arguments already considered and rejected by a court or to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue. If a party disagrees with the Court's decision on a legal issue, its "proper recourse" is not by way of a motion for reconsideration "but appeal to the Sixth Circuit."

*Jones v. Brunsman*, Case No. 2:08-cv-0026, 2009 U.S. Dist. LEXIS 108241, at *1 (S.D. Ohio 2009) (citing *McConocha v. Blue Cross and Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996); *see also Am. Marietta Corp. v. Essroc Cement Corp.,* 59 F. App'x 668, 671 (6th Cir. 2003) ("[A] motion to reconsider should not be used to re-litigate issues previously considered.").

Defendant argues that the most recent production of documents from Plaintiffs "bears directly on the accuracy and applicability [of] the amount Plaintiffs are seeking in restitution from Comerica," (Proffer at 2); however, with respect to this first issue—the *applicability*—Defendant does not point to anything within the new production that supports its claim. Rather, Defendant argues that the trial record now demonstrates that Plaintiffs have not "tied the maintenance funds to an amount of restitution against Comerica" and therefore "it is imperative that Plaintiffs prove their damages against Comerica" (Proffer at 3).

This argument is the same one Defendant made in pre-trial briefing which the Court rejected in its August 19, 2011, Order. In Defendant's pre-trial brief, it similarly argued that

"Plaintiffs should be required to prove their damages against Comerica to establish their claim for breach of trust," making more or less identical arguments regarding the nature of Plaintiffs' theory of recovery against Comerica. (Dkt. 80). The Court did not require further evidence, or a trial, to interpret the Sixth Circuit's holding as establishing the amount of damages against Comerica. (Dkt. 84) (citing *In re Arctic Express, Inc.*, 636 F.3d at 801). Defendant's renewed argument on the same grounds post-trial is likewise dismissed.

      **B.**      **Defendant's Proffered Evidence Undermining the Accuracy of Damages**

Second, Defendant offers certain documents produced in Plaintiffs' latest set of disclosures as new evidence that the amount of Plaintiffs' damages in this case is inaccurate. The documents include (i) letters between Plaintiffs' counsel, Ms. Joyce Mayers, and Arctic's counsel discussing their understanding that Plaintiffs would be pursuing Comerica for the full amount of damages; (ii) a letter from Ms. Mayers to Arctic's counsel which Defendant alleges indicates improper interest compounding in calculating the interest portion of the damages figure, contrary to the Court's explicit instructions; and (iii) Plaintiffs' attorney billing statements with time entries indicating research into binding Comerica to the judgment reached against Arctic under the doctrine of offensive collateral estoppel. These documents, argues Defendant, "confirm suspicions" that the established settlement amount of damages from the Arctic Litigation is arbitrary and the result of collusion between Plaintiffs and Arctic.

      **1.**      **Settlement discussions between Plaintiffs and Arctic regarding damages**

Defendant offers copies of letters between Ms. Mayers and Arctic's counsel discussing their agreement to limit Arctic's liability to a fraction of the full amount, and Arctic's cooperation in Plaintiffs' pursuit of the full amount against Comerica as evidence that Plaintiffs and Arctic colluded during settlement negotiations in reaching the total amount of damages.

6

Specifically, Defendant argues that these documents show that the agreement between Plaintiffs and Arctic during settlement was a collusive arrangement to inflate the total damages sum with the understanding that it would be Comerica, not Arctic, which would be held liable for the full amount. Neither of the settling parties had an incentive to "negotiate down" the dollar amount, and, in fact, once Arctic knew its damages were capped at $900,000, both Plaintiffs and Arctic had an incentive to drive up the total amount.

The flaw in the Defendant's position is that while these particular documents may be new to its attorneys' eyes, what they show about the structure of the settlement reached in the Arctic Litigation most certainly is not. That Arctic would only be liable for a portion of the settlement amount, and that Plaintiffs would be pursuing Defendant in the district court for the full amount of the judgment was well-known to all parties, including Defendant, when the settlement was approved. The letters from Ms. Mayers merely shed light on particular negotiations about the terms of the settlement as approved on the record by this Court, of which Defendant has had ample notice, and to which Defendant had opportunities to object and to litigate prior to trial.

As Plaintiffs point out in their counter-proffer, Plaintiffs' Adversary Complaint filed against Comerica during Arctic's bankruptcy proceedings, which preceded their settlement with Arctic, plainly states Plaintiffs' intent to seek satisfaction from Comerica for the final judgment to be reached in the Arctic Litigation. *See* Adversary Complaint, Adv. Pro. No. 04-2022, U.S. Bankruptcy Court, Case No. 03-66797, p.10, ¶ E. Additionally, the Court's May 28, 2004, Provisional Order Approving Class Settlement[1] (a public record) documents the methodology used in calculating the damages and interest, *see* Prov. Order Approving Settlement, Case No. 97-750, Dkt. 204, ¶¶ B-D, and the agreement that the lump sum of $900,000 paid from Arctic's bankruptcy proceedings would satisfy Arctic's liability to Plaintiffs, *id*. at ¶ G.

---

[1] As made final by the Court's July 16, 2004, Confirmation of Order Approving Class Settlement.

*a. Standard for Reopening a Final Approved Settlement Agreement*

The Court having re-affirmed today, as in its previous August 17, 2011, Order, that Comerica is liable for the full damages amount established in the Arctic Litigation, *see* Section III(A), *supra*, granting Defendant's present request to force Plaintiffs to prove damages would therefore entail reopening the final approved settlement reached in 2004 between Plaintiffs and Arctic. It is well-settled that "[o]nce concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment." *Clinton St. Greater Bethlehem Church v. City of Detroit*, 484 F.2d 185, 189 (6th Cir. 1973). The settlement amount in the Arctic Litigation was in fact approved and incorporated into a final judgment, after being found "appropriate based upon the records maintained by Arctic and D&A," (Dkt. 209, 97-cv-750), but not before notice of the settlement and fairness hearings were held to hear any objections to the terms (Dkt. 205, 97-cv-750).

The Sixth Circuit's standard to vacate a settlement agreement is stiff, as "a district court must 'find facts sufficient to justify setting aside the settlement, and that such a setting aside normally would require extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief.'" *G. G. Marck & Assocs. v. Peng*, No. 05-cv-7391, 2009 U.S. Dist. LEXIS 98142, at *8 (N.D. Ohio 2009) (quoting *G.G. Marck and Assocs., Inc. v. Peng*, 309 F. App'x 928, 935 (6th Cir. 2009)). Rule 60(b) states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>     (1) mistake, inadvertence, surprise, or excusable neglect;
>     (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>     (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>     (4) the judgment is void;

>    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>    (6) any other reason that justifies relief.

Fed. R. Civ. P. § 60(b).

Defendant's proffered evidence of Ms. Mayers's letters to Arctic during settlement showing the parties' understanding that Arctic's final liability would be limited and that the Plaintiffs would be pursuing satisfaction of the full amount against Comerica can hardly be said to constitute "newly discovered evidence that, with reasonable diligence, could not have been discovered" prior to the judgment. *Id.* As stated above, although the letters from Ms. Mayers do indeed show that Arctic's liability was limited to 20% (or $900,000), and the parties' "cooperation" in Plaintiffs' recovering the full amount from Defendant Comerica, all of these facts were known to Comerica long before Plaintiffs' last set of productions during trial.

More importantly, contrary to Defendant's conclusions, the proffered letters do not "show that the agreement was a collusive arrangement where the parties set an inflated and arbitrary dollar figure." (Proffer at 4.) The statements from Ms. Mayers highlighted by Defendant merely seek confirmation from Arctic of the agreed terms of settlement. Defendant understandably does not agree to those terms, as they are now liable under them for millions of dollars. Nevertheless, in no way do Ms. Mayers's communications demonstrate signs of "fraud or duress" to warrant reopening the settlement. *See RE/MAX Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 650 (6th Cir. 2001) ("Summary enforcement of a settlement agreement for which there is no dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress."). In those very same communications, Ms. Mayers reiterated that the amount of damages was "calculated applying a specific methodology to maintenance accounts for each class member," (Proffer, Exh. A, TCLF004420), a method which the Court approved

and the Sixth Circuit affirmed over Comerica's objections. *See Owner Operator Indep. Drivers Ass'n, Inc.*, 615 F. Supp. 2d at 703; *In re Arctic*, 636 F.3d at 789.

      *b. Disputes over the Substance and Methodology of Damages were Fully Litigated*

Comerica had ample opportunities to contest the damages award in this lawsuit. After the Plaintiffs amended their Complaint against Comerica, the methodology of how the Plaintiffs' damages were calculated was subsequently discussed at length by the parties' pleadings and the respective courts, and was actually litigated by Defendant. In its motion for summary judgment in this case, Comerica disputed the Plaintiffs' damages against it. This Court found that, "[t]he measure of damages was calculated by matching lease terms for individual class members to maintenance expenses by truck unit and date. (Arctic Order dated March 15, 2004 at 3-4)." *Owner Operator Indep. Drivers Ass'n, Inc.,* 615 F. Supp. 2d at 703, FN3. The Court continued, finding the following:

> The Arctic Litigation resolved issues regarding the rights and obligations relating to the maintenance escrows as between Arctic and the Class. In approving the settlement in the Arctic Litigation, this Court determined that the methodology used to calculate the Judgment Amount was appropriate based upon the records maintained by Arctic and D&A. 3 (Prov. Order Approving Stmnt., May 28, 2004). Interest was calculated in accordance with the mandated rates set forth in the truth-in-leasing regulations. (*Id.*) The net balance in maintenance escrows and interest for each Class Member was calculated based upon the methodology approved by this Order. (*Id.*) On this basis, the total maintenance escrows awarded to the Class was $ 4,070,190, the total interest awarded was $ 1,512,894, and the total damages awarded was $ 5,583,084. (*Id.*) Therefore, the judgment awarded reflected the amount in unused maintenance escrows which Arctic failed to return to the Class in violation of the Truth-in-Leasing regulations.

*Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank,* 615 F. Supp. 2d at 703. The Sixth Circuit affirmed that "[t]he settlement equaled the total amount of maintenance escrow funds, plus interest, owed by Arctic and D & A to the owner-operators," *In re Arctic*, 636 F.3d at 789, and held that Comerica would be liable for the amount, *id*. at 801. The Sixth Circuit's holding

10

was confirmed by this Court in its August 17, 2011, Order, stating "the question of the amount of damages that the Defendant owes to Plaintiffs has therefore already been determined." (Dkt. 84.)

In sum, Defendant not only had actual notice of the terms of the settlement between Plaintiffs and Arctic, but it also contested the issue of the accuracy of Plaintiffs' recoverable damages against it. The time for disputing the amount of damages in this case has passed. Defendant is correct that Plaintiffs have not been required to prove their damages against Comerica as an evidentiary matter in this case; however, that is a ruling the parties fully litigated and Plaintiffs won in both this Court and the Sixth Circuit. The letters sent during settlement negotiations proffered by Defendant, therefore, do not warrant vacating the settled amount of Plaintiffs' damages or the Court's ruling establishing those damages against Defendant.

### 2. Alleged Improper Interest Compounding

Defendant alleges, additionally, that new evidence shows Plaintiffs improperly compounded the interest when calculating the class members' interest accumulated over the course of the recovery period. The specific document Defendant offers to prove this claim is a February 25, 2004, letter sent by Ms. Mayers to Arctic's counsel during settlement, which states that the interest on the maintenance escrow balance to be returned to Plaintiffs was calculated, computed, and "compounded quarterly for the recovery period." (Proffer, Exh. A, TCLF004364.) Defendant claims this statement is hard evidence that Plaintiffs directly contravened the Court's order in the Arctic Litigation denying summary judgment on the issue of damages, where the Court stated that "Plaintiffs incorrectly compound[ed] interest." *Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 906 (S.D. Ohio 2003).

Defendant's allegation, however, is baseless. The damages figure, including the interest calculated, went through multiple revisions after the Court denied the Plaintiffs' proposed figure in its 2003 Order denying summary judgment on damages. Plaintiffs had originally sought damages in the amount of $16,464,876, plus interest in the amount of $5,922,386. *Id.* at 899. This figure was oversized due to a number of errors and miscalculations, but was subsequently corrected. The final figure the parties arrived at in settlement of $5,583,084, including $1,512,894 in interest, was based upon the revised methodology approved by the Court as being "in accordance with the mandated rates set forth in the truth-in-leasing regulations, 49 C.F.R. § 376.12(k)." (Prov. Order Approving Settlement, Case No. 97-750, Dkt. 204, ¶ C.) 49 C.F.R. § 376(k)(5) requires that "the carrier shall pay interest on the escrow fund on *at least a quarterly basis*," which is precisely what Plaintiffs proposed in the document Defendant now proffers as evidence of impropriety. The interest awarded was correct.

### C. Evidence of Plaintiffs' Attorneys Researching Offensive Collateral Estoppel

Finally, Defendant offers excerpts from Plaintiffs' produced attorney billing sheets which document Plaintiffs' attorneys' time spent researching issues of offensive collateral estoppel and issue preclusion with regard to binding Comerica to the damages amount reached in the Arctic Litigation. Defendant alleges that this further shows Plaintiffs' desire to avoid having to prove their damages against Comerica. Defendant's assessment of Plaintiffs' strategy seems accurate; however, the Court finds no basis for vacating the approved settlement simply because Plaintiffs were already researching how to hold Comerica liable for the damages they secured. Plaintiffs had every right to begin researching issue preclusion on damages, and through protracted litigation, they ultimately secured that very result. That Comerica finds that outcome unfair does not, without more, create a basis for re-litigating the issue.

12

## IV.  CONCLUSION

For the reasons stated above, Defendant Comerica's offer of proof and request that the Plaintiffs be required to prove damages is **DENIED**.

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:   December 1, 2011**